IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:23-cv-02533-SKC-MEH

STEVE MIGHELL, on behalf of himself and those similarly situated,

    Plaintiff,

v.

HPG PIZZA I, LLC, *et al.*,

    Defendants.

## ORDER GRANTING TWO MOTIONS TO DISMISS (DKTS. 20 & 21)

The question prompted by this action is whether certain Papa John's Pizza stores in Colorado paid their pizza delivery drivers appropriately. Plaintiff Steve Mighell sued Defendants HPG Pizza I, LLC (HPG I), HPG Pizza II, LLC (HPG II), and Rob Prange (along with unidentified John Does and Doe Corporations), alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, various Colorado state law violations, and a claim for unjust enrichment. Dkt. 4. Specifically, the First Amended Class and Collective Action Complaint (AC) brings the following claims: (1) FLSA: failure to pay minimum wages; (2) FLSA: failure to pay overtime wages; (3) Colo. Rev. Stat. § 8-6-101 *et seq.* and 7 CCR 1103-1:1 *et seq.*: failure to pay minimum wages; (4) Colorado Wage Claim Act violation; (5) state law: unpaid meal breaks; (6) state law: unpaid rest breaks; and (7) unjust enrichment.

The thrust of the AC is its allegations that Defendants failed to fully or properly reimburse Plaintiff's (and those similarly situated) vehicle expenses incurred while delivering pizzas for Defendants, and that failure resulted in Defendants paying Plaintiff below the respective minimum wages required by the FLSA and Colorado statute. He further seeks conditional certification of a class as an FLSA collective. Dkt. 40.

HPG I filed a Motion to Partially Dismiss the AC. Dkt. 21 (HPG I MTD). HPG I argues Plaintiff's FLSA claims fail under Fed. R. Civ. P. 12(b)(1). It claims Plaintiff lacks standing because he suffered no injury in fact because HPG I paid him in excess of the federal minimum wage amount and he was paid for all overtime he worked. Defendant further contends Plaintiff lacks standing to pursue claims for alleged missed meal periods because he fails to allege any unpaid wages. The HPG I MTD also argues the Colorado Minimum Wage Act and state regulatory violations based upon the alleged failure to reimburse expenses and unpaid meal periods fail under Fed. R. Civ. P. 12(b)(6).

HPG II and Prange also filed a Motion to Dismiss (HPG II MTD) arguing both the AC fails under Rule 12(b)(1) due to Plaintiff's lack of standing, and fails under Rule 12(b)(6) for failure to state a plausible claim for relief. Dkt. 20.

The Court has reviewed the full briefing on these motions—to include the responses (Dkts. 30, 31) and replies (Dkts. 35, 36)—and finds no evidentiary hearing is necessary. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174

(10th Cir. 1992) ("The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction . . . ." (quoting *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987))).

Plaintiff alleges the Court has jurisdiction over his FLSA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. As explained below, the Court finds Plaintiff has failed to carry his burden to establish his standing to pursue his FLSA claims and dismisses them without prejudice. The Court further declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice. Because the Court dismisses the FLSA claims, the Court denies as moot Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 40) and Defendants' Motion to Strike Declaration of Daniel Opperman Filed in Support of Plaintiff's Motion for Conditional Certification (Dkt. 49).

## A. LEGAL PRINCIPLES

### 1. Rule 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Under Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's subject matter jurisdiction is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d

1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id.* at 1002-1003.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**2. Article III Standing**

Article III standing is a "bedrock constitutional requirement." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). Article III of the Constitution limits the federal courts' jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S.

330, 337 (2016). Because Article III standing is an issue of a court's jurisdiction, a court must first satisfy itself that it exists. *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021).

To possess Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These requirements are "an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560. And they help to ensure that a plaintiff is not "a mere bystander, but instead [has] a 'personal stake' in the dispute." *All. for Hippocratic Med.*, 602 U.S. at 378 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of [ ] wrongdoing.'" *Id.* at 379 (citation omitted).

## B. FACTUAL BACKGROUND

The AC alleges "Defendants own and operate over 30 Papa John's franchise stores located in Colorado ('HPG Papa John's stores.')." Dkt. 4, ¶¶2, 16, 29, 43. Plaintiff worked for Defendants as a delivery driver at one of their Papa John's Pizza stores in Denver, Colorado, from June 15, 2023, to July 13, 2023. *Id.* at ¶¶11, 97. "Plaintiff worked dual jobs—one where he delivered food and received tips, and

5

another where he worked inside the store completing non-tipped duties." *Id.* at ¶98. "HPG Pizza I, LLC is the entity that appears on Plaintiff's paystubs for work he completed for Defendants." *Id.* at ¶19.

In performing his work, Plaintiff provided his own vehicle and incurred related vehicle maintenance and operation costs to make deliveries. *Id.* at ¶¶106-08. "Defendants did not reimburse Plaintiff based on his actual delivery-related expenses," nor was he "reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries." *Id.* at ¶¶110, 111. Rather, he "was reimbursed approximately $.35 per mile when on the road making deliveries for Defendants."[1] *Id.* at ¶103.

The AC alleges "Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Plaintiff," and "[d]uring Plaintiff's employment with Defendants, Defendants [ ] failed to adequately reimburse Plaintiff for automobile and other job-related expenses." *Id.* at ¶¶112, 113. Plaintiff then alleges several estimates concerning his deliveries: he "regularly worked shifts that last between 8 and 12 hours;" he "was paid approximately $10.60 per hour for the hours he worked on the road making deliveries" and for his work inside the store; and he

---

[1] Plaintiff also alleges that, "[o]n at least one occasion, Plaintiff was asked to use his personal vehicle, in addition to making deliveries to customers, to transport food supplies from another store to the location he worked at," and he "was not reimbursed for the mileage while driving for Defendants' for this other, non-customer related work that also required the use of his personal vehicle." Dkt. 4, ¶¶104, 105. He makes no allegations about what monetary effect this delivery had on his hourly wage.

"regularly made approximately fifteen deliveries per shift" and "regularly drove about 5 to 10 miles per delivery." *Id.* at ¶¶99, 100, 114-15, 121.

According to the AC, "[c]onsidering a conservative estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $1.525 per delivery ($.305/mile x 5 miles)." *Id.* at ¶116 (utilizing and alleging the 2023 IRS business mileage reimbursement rate of $.655 per mile and subtracting it from the $.35 reimbursement rate Defendants used). "Thus, while making deliveries (assuming 2.5 deliveries per hour), Plaintiff has 'kicked back' to Defendants approximately $4.575 per hour ($1.525 per delivery x 2.5 deliveries per hour)." *Id.* at ¶117.

### C. ANALYSIS

**1. FLSA Claims**

Plaintiff alleges two FLSA violations—failure to pay federal minimum wage and failure to pay overtime wages. Dkt. 4, ¶¶155-170. Each is predicated on Plaintiff's theory that Defendants failed to properly reimburse him for his vehicle expenses and thus effectively reduced his hourly wages below the FLSA minimum wage and overtime requirements.[2]

---

[2] Plaintiff's theory is also predicated on the concept that an employee can have multiple employers for the same work hours based upon how the FLSA defines employers. Because the Court finds Plaintiff has failed to establish he has standing for his FLSA claims, the Court does not address which of any Defendants were Plaintiff's employer(s). *See New York v. Scalia*, 490 F. Supp. 3d 748, 758-59 (S.D.N.Y. 2020) ("Given the FLSA's 'expansive . . . definition of "employer,"' the [Supreme] Court recognized that an employee could have multiple employers for a single set of hours worked." (cleaned up)). But without deciding the issue, the Amended Complaint

7

The FLSA requires employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1). It further requires employers to pay an overtime wage for hours worked in excess of 40 hours per week that is not less than one and one-half times the employee's regular payrate. *Id.* at § 207(a)(1). Minimum wages must be "paid 'free and clear' of job-related expenses." *Blose v. Jarinc, Ltd*, No. 1:18-cv-02184-RM-SKC, 2020 WL 5513383, at *1 (D. Colo. Sept. 14, 2020) (quoting 29 C.F.R. § 531.35). And its "anti-kickback regulation prohibits payment arrangements that shift part of the employer's business expense to its employees when doing so reduces an employee's wages below the statutory minimum." *Id.* (citing 29 C.F.R. § 531.35). But it does not address how an employer must calculate and reimburse those expenses. *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2011 WL 2791331, at *3 (D. Colo. July 14, 2011).

The problem for Plaintiff is the allegations in the AC fail to show Plaintiff has suffered an injury in fact for Article III standing purposes. The face of the AC and the facts presented by the parties fail to manifest the alleged FLSA injury. First, the AC's pleadings concerning Plaintiff's delivery expenses are assumptions built upon estimates that are not certain enough to establish a concrete injury.

---

appears to come close to, or actually does, group plead against the Defendants without first alleging facts sufficient to show that each of the Defendants was Plaintiff's employer under the Tenth Circuit's economic reality test. *See Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440-41 (10th Cir. 1998) (discussing economic reality test); *Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018) (group pleading violates Rule 8).

Second, as HPG I correctly points out, Plaintiff's allegations in the AC make clear that Plaintiff does not allege he was *not* paid the applicable Colorado Minimum Wage of $13.65 per hour in 2023. It alleges Defendants paid him "approximately $10.60 per hour." The evidence presented by HPG I is that when Plaintiff was employed for a total of six weeks in June and July 2023, HPG I relied on Colorado's tipped minimum wage of $10.63 and Plaintiff always received tips that brought him above the Colorado tipped minimum wage of $13.65 per hour ($10.63 base rate plus applicable tips); HPG I never took a tip credit under 29 U.S.C. § 203(m). (Dkt. 21-1 (Prange Decl.), ¶¶ 3-6; Dkt. 21-2 (Plaintiff's pay stubs, attached to Prange Decl. as Ex. 1.)

Thus, even using Plaintiff's own assumptions and estimates alleged in the AC based on the assumed IRS mileage-reimbursement rate, Plaintiff claims he "kicked back" to HPG I an equivalent of up to $4.58 per hour. Dkt. 4, ¶117. But at a minimum wage of $13.65 per hour, deducting the assumed "kick back" ($13.65 - $4.58) results in an hourly minimum wage of $9.07 per hour, well above the $7.25 federal minimum wage. Accordingly, Plaintiff has failed to show he has an injury in fact for standing to assert his FLSA minimum wage claim. *See Marcial v. New Hudson Family Rest. Inc.*, No. 7:18-cv-0663(NSR)(JCM), 2019 WL 1900336, at *6 (S.D.N.Y. Apr. 29, 2019) (dismissing claim under Rule 12(b)(1) because the face of the complaint showed no violation of the FLSA's minimum wage provision and therefore plaintiff had not alleged an injury and lacked standing for the claim).

The same is true of the FLSA overtime claim. Plaintiff alleges that overtime hours he worked were not properly compensated because of under-reimbursement of delivery expenses—the same theory underpinning his FLSA wage claim. Dkt. 4, ¶¶166-67. But for the same reason, his FLSA overtime claim also fails. Moreover, his FLSA overtime claim is belied by the pay stubs attached to HPG I's response. Again, as HPG I points out, the pay stubs show Plaintiff was paid for the overtime hours he worked. In fact, he was paid overtime at $20.82 per hour, which exceeds the FLSA requirement for overtime to be paid at the rate of at least one and one-half an employee's regular rate.[3] Dkt. 21-2, p.4. Thus, Plaintiff has failed to show an injury in fact regarding his alleged FLSA overtime claim, and therefore, he has failed to establish standing to bring it.

In sum, the AC fails to state any damages to support Plaintiff's standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."). The Court therefore dismisses Plaintiff's FLSA claims, without prejudice, against each of the Defendants for lack of subject matter jurisdiction.

---

[3] His regular rate was $10.63 or $10.64 per hour. Dkt. 21-2, p.4.

### 2. State Law Claims

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Plaintiff's remaining claims arise under Colorado law. There is no compelling reason to maintain jurisdiction over the state law claims in light of this Court's dismissal of the claims arising under federal law. The Court declines to exercise jurisdiction over the remaining state law claims and dismisses those claims, without prejudice.[4] 28 U.S.C. § 1367(c)(3).

*   *   *

For the reasons shared above, Defendant HPG I's MTD (Dkt. 21) is GRANTED and Defendants HPG II's and Prange's MTD (Dkt. 20) is GRANTED. It is ORDERED that:

(1) the FLSA claims are DISMISSED without prejudice under Rule 12(b)(1);

(2) the state law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3);

(3) Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 40) is DENIED AS MOOT;

(4) Defendants' Motion to Strike Declaration of Daniel Opperman Filed in

---

[4] Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court need not address the merits of Defendants' arguments concerning those claims.

Support of Plaintiff's Motion for Conditional Certification (Dkt. 49) is DENIED AS MOOT; and

(5) the Clerk of Court is ORDERED to terminate this action.

DATED: December 12, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge